IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| ALFRED R. LaPETER and SHARON R. LaPETER, as Trustees of the LaPeter 1985 Living Trust, | ) ) ) ) | Case No. CV-06-121-S-BLW |
| Plaintiffs, | ) ) ) | **AMENDED MEMORANDUM DECISION AND ORDER** |
| v. | ) ) |  |
| CANADA LIFE INSURANCE OF AMERICA, | ) ) ) |  |
| Defendant. | ) ) |  |

The Court has before it Canada Life's Motion to Correct Clerical Mistake in Memorandum Decision and Order (Docket No. 92). The motion is unopposed. Accordingly, the Court will correct the following four clerical mistakes in its original opinion: (1) correct the spelling of verbiage on page 8 of the original decision; (2) correct the spelling of the name LaPeter on page 10 of the original decision; (3) add a closing quote after the word provisions at the end of the first paragraph on page 13; and (4) change the second to the last sentence of the Memorandum Decision, just before the Order section, to read as follows: Moreover, given the Court's determination above that the conditions precedent were not met, the Court finds that Canada Life's representations were not false,

**Amended Memorandum Decision and Order - 1**

even under LaPeter's reading of the Commitment Letter. Thus, the Amended Memorandum Decision and Order shall read as follows:

## INTRODUCTION

The Court has before it Plaintiffs' Motion for Summary Judgment (Docket No. 48) and Canada Life's Motion for Summary Judgment (Docket No. 52). The Court heard oral argument on the motions on June 7, 2007. The parties then submitted supplemental briefs. Having now reviewed all the briefs, the Court issues the following decision.

## I.     Summary Judgment Standard of Review

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

**Amended Memorandum Decision and Order - 2**

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir.2002);

**Amended Memorandum Decision and Order** - 3

*see also* Fed.R.Civ.P. 56(e).  In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered.  *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003).  If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay.  *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay).

## II.    BACKGROUND

In June 2005, Canada Life Insurance Company of America ("Canada Life") agreed in writing to refinance an existing $6 million loan to Alfred and Sharon LaPeter, in their capacity as trustees of the LaPeter 1985 Living Trust ("LaPeter").  The loan was made for the purpose of refinancing an earlier loan on a property known as the ParkCenter Mall, which was owned by LaPeter.

The parties' written agreement took the form of a June 2005 commitment letter (the "Commitment Letter").  The Commitment Letter provided that Canada Life's obligation to lend the money was contingent upon the occurrence of certain conditions precedent, including delivery, by LaPeter to Canada Life, of copies of the leases then in place at the ParkCenter Mall, and Canada Life finding those

**Amended Memorandum Decision and Order - 4**

leases satisfactory in form and content.

When Canada Life received the leases in late 2005, it determined that they were unsatisfactory because they were inconsistent with its earlier understanding of the leases when it signed the Commitment Letter in June 2005. Canada Life therefore terminated the Commitment Letter in November 2005.

## III. ANALYSIS

LaPeter claims that Canada Life's refusal to refinance the loan constitutes a breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud.[1]

### A. Breach of Contract Claim

LaPeter claims that Canada Life breached the Commitment Letter when it refused to refinance LaPeter's loan.  Canada Life counters that it was justified in refusing to refinance the loan because certain conditions precedent were not met, and because LaPeter misrepresented relevant information.

#### 1. Conditions Precedent

Idaho law controls both the construction of the Commitment Letter and the question of breach.  *See In re Aslan*, 909 F.2d 367, 369 (9th Cir. 1990).  In Idaho,

---

[1] LaPeter withdrew claims for specific performance, intentional interference with business relations, and intentional interference with prospective economic advantage.

**Amended Memorandum Decision and Order - 5**

if the terms of a contract are clear and unambiguous, the meaning and legal effect of the contract are questions of law which must be determined from the plain meaning of the words used.  See *Independence Lead Mines v. Hecla Mining Co., 137 P.3d 409, 413 (Idaho 2006)*.

Here, the Commitment Letter unambiguously states that "Lender's [Canada Life] obligations under this Commitment Letter shall be subject to the satisfaction of all of the following conditions precedent to Closing."  (Schwartz Aff., Ex. 13, p.5, Docket No. 57-5).  In relevant part, the Commitment Letter outlines the following conditions precedent:

> **Lease Review.**  At least 15 days prior to Closing, Borrower shall provide Lender and Lender's local counsel with copies of all leases of the Property or any portion thereof, along with any amendments or renewal agreements pertaining to the same, certified by Borrower to be true, complete and correct, all in form and content satisfactory to Lender, together with Lease Abstracts prepared by the Correspondent, including a lease with Keybank, N.A. for 40,000 square feet of Property commencing on or before Closing and terminating July 31, 2009, at an annual rental of not less than $600,000 for the first year with a 3% increase annually.

(Schwartz Aff., Ex. 13, p.10, Docket No. 57-5).

Based on this language, the Commitment Letter unambiguously required LaPeter to provide Canada Life with copies of all leases of the ParkCenter Mall, in form and content satisfactory to Canada Life, before Canada Life was required to

**Amended Memorandum Decision and Order** - 6

refinance LaPeter's loan. In determining whether the form and content of the leases were satisfactory, Canada Life was required to act in good faith.

The undisputed facts of this case establish that Canada Life entered into the Commitment Letter, which included an interest rate of 5%, based on its understanding that the terms of the KeyBank lease would be consistent with the final letter of intent, and based on the fact that Talbots was leaving the ParkCenter Mall. (See Schwartz Aff., ¶ 20). With respect to the KeyBank lease, the final letter of intent stated that KeyBank's new annual average rent would be approximately $15.45 per square foot over the three year period. It also provided that Key Bank would start paying its new, lower rent, in February 2006, six months prior to the expiration of its existing lease term. (See Schwartz Aff., ¶¶ 9-10). With respect to Talbots, the lease term was set to expire on January 31, 2006, and LaPeter told Schwartz that Talbots was leaving the ParkCenter Mall in January 2006. (See Schwartz Aff., ¶¶ 11-12).

The final leases, however, were much different from the lease terms which served as the basis of the underwriting analysis for the Commitment Letter. (See Schwartz Aff., ¶ 53). First, Talbots extended its lease. (See Schwartz Aff., ¶ 52, Ex. 15). Second, KeyBank's rent was approximately $140,000 more in total net rent under the terms of the new KeyBank lease over the period from February 1,

**Amended Memorandum Decision and Order** - 7

2006 through July 31, 2009.  (See Schwartz Aff., ¶ 50, Ex. 14).  Additionally, the new, lower, KeyBank rents were not set to commence until August 1, 2006 instead of February 1, 2006 – for the period between February 1, 2006 and July 31, 2006, KeyBank would continue paying its old, higher, rents.  (See Schwartz Aff., ¶ 51, Ex. 14).

Based on the difference between the anticipated and final lease terms, Canada Life contends that it acted in good faith when it determined that the leases were not satisfactory in form and content.  At oral argument, there was some discussion between the parties and the Court about whether the term "form and content" in the Commitment Letter is ambiguous.  The Court therefore asked the parties to provide it with supplemental briefs addressing any case law discussing the term "form and content."  Canada Life provided the Court with reference to *Chodos v. West Publ'g Co.*, 292 F.3d 992 (9th Cir. 2002).  In that case, the Ninth Circuit evaluated a publishing contract which obligated the publisher to publish a book if the author's manuscript was acceptable in "form and content."  The Ninth Circuit noted that nothing in the contract suggested that the ordinary meaning of the words "form and content" was not intended.  *See Chodos*, 292 F.3d at 998.  The

**Amended Memorandum Decision and Order** - 8

same is true in this case.² Accordingly, the Court will use the ordinary meaning of the words "form and content" in its consideration of the leases. Under this analysis, it is clear to the Court that "form" refers to the style and structure of the leases, and is therefore mere verbiage. It is the "content" of the leases that is the heart of the matter.

The Court finds that there is nothing more inherent to the content of the leases than the term and rental rate of each lease. Thus, because the lease terms and the rental rates of the KeyBank and Talbots leases changed significantly (as discussed in detail above, Talbots extended its lease, and the KeyBank lease included approximately $140,000 more in total net rent, plus the new KeyBank rents were not set to commence until August 1, 2006 instead of February 1, 2006), the Court finds that Canada Life acted in good faith when it found them unsatisfactory in form and content.³ Specifically, Canada Life had made a

---

² Although the Court agrees that the ordinary meaning of the words "form and content" should be used in this case, that does not mean that the words will be interpreted in the same manner as they were interpreted in *Chodos*. The form and content of a lease is certainly different from the form and content of a book. In this case, the Court will consider the ordinary meaning of the words form and content as they apply to a lease.

³ The parties cite different, but similar, standards for addressing Canada Life's good faith requirement. Citing *Wade Baker & Sons Farms v. Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints,* (42 P.3d 715 (Id.Ct.App. 2002), LaPeter suggests that when the occurrence of a condition precedent is largely or exclusively within the control of one party (Canada Life in this case), there is an implied obligation on that party to enforce the condition precedent in good faith. Canada Life, citing *Cheney v. Jemmett,* 693 P.2d 1031 (Idaho 1984), suggests that where a contract provides that the matter of approval of performance is reserved to

**Amended Memorandum Decision and Order** - **9**

significant concession in giving LaPeter a below market interest rate on the loan based on the anticipated leases, which, in the end, were not accurate.[4]  Canada Life would not have agreed to the 5% interest rate on the loan had it known about the additional rental income LaPeter would be receiving from KeyBank and Talbots. (See Schwartz Aff., ¶ 53).  Thus, Canada Life acted in good faith when it found the final leases unsatisfactory.[5]

Accordingly, the Court finds that the conditions precedent were not satisfied, and Canada Life's rescission of the Commitment Letter was justified.  The Court will therefore grant Canada Life's motion and deny LaPeter's motion for summary

---

a party, that party must act fairly and in good faith in exercising the right, and the party has no right to withhold its approval without a "reasonable justification" for doing so. Although these cases may suggest somewhat differing standards for determining whether a party acted in good faith, the same result is reached regardless of the standard used – Canada Life acted in good faith and was reasonably justified in finding the leases unacceptable.

[4] LaPeter's argument that Canada Life would have nevertheless agreed to the 5% interest rate because it was a market rate of interest is without merit.  LaPeter offers no evidence that 5% was the market rate of interest.  Moreover, were the 5% interest rate a market interest rate, LaPeter could not have suffered any damages because he would have lost nothing – he could have received the market interest rate elsewhere.

[5] The Court is acutely aware that the question of whether there is an issue of fact as to whether Canada Life acted in good faith in not approving the form and content of the leases must be considered while viewing the evidence and any inferences which can be derived therefrom in a light most favorable to LaPeter.  A thorough review of the record reveals that the evidence and any inferences drawn therefrom can be viewed in no other way than to find that Canada Life initially made a significant concession in offering LaPeter a below market interest rate based on inaccurate lease information, and that Canada Life would not have agreed to the 5% interest rate on the loan had it known about the additional rental income LaPeter would be receiving from KeyBank and Talbots.  For example, LaPeter has offered no evidence, and no inferences can be drawn from the evidence before the Court, that Canada Life had ulterior motives for not funding the loan, which would suggest a lack of good faith on the part of Canada Life.

**Amended Memorandum Decision and Order** - 10

judgment on LaPeter's breach of contract claim.

### 2. Misrepresentation

Additionally, even if the Court found that the conditions precedent were met, the Court would grant summary judgment in favor of Canada Life because LaPeter made material misrepresentations about the Talbots lease. In Idaho, if a party's manifestation of assent to contract is induced by a material misrepresentation by the other party, upon which the recipient was justified in relying, the contract is voidable by the recipient. *See Robinson v. State Farm Mutual Automobile insurance Co.*, 45 P.3d 829, 838 (Idaho 2002).[6] A misrepresentation induces a party's manifestation of assent if it substantially contributes to the decision to manifest assent. Restatement (Second) of Contracts § 167.[7]

Canada Life contends that LaPeter made misrepresentations about the term

---

[6] In *Robinson*, the Idaho Supreme Court addressed material misrepresentations in contracts for insurance. In doing so, the court stated that although Idaho Code § 41-1811 now controls the misrepresentation defense in contracts for insurance, the common law controlled in such cases prior to the adoption of 41-1811. The court cited the Restatement (Second) of Contracts § 164(a) (1981) as the common law. Section 164(a) states that if a party's manifestation of assent to contract is induced by a material misrepresentation by the other party, upon which the recipient was justified in relying, the contract is voidable by the recipient. Based on *Robinson*, it is reasonable to assume that the Idaho Supreme Court would apply the misrepresentation defense outlined in section 164(a) to non-insurance contracts such as the Commitment Letter in this case.

[7] Given the Idaho Supreme Court's reference to the Restatement (Second) of Contracts § 164(a) (1981) for interpretation of the misrepresentation defense in *Robinson*, it is reasonable to assume the court would also rely on the Restatement for an interpretation of rules and definitions related to that defense.

**Amended Memorandum Decision and Order - 11**


of the Talbots lease with the ParkCenter Mall. Specifically, LaPeter told Canada Life that Talbots was leaving the mall in 2006, and he did not inform Canada Life that Talbots had extended its lease term from January 31, 2006 to January 31, 2008. (See LaPeter Aff., pp. 226, ¶ 13-21 attached as Ex. A to Morrow Aff.; 265, ¶ 9-14 and 267, ¶ 11-16 attached as Ex. A to Faucher Aff.). Brian Schwartz, Canada Life's V.P. of Investments, then states that had Canada Life know about the extension, it would not have agreed to the 5% interest rate on the new loan with LaPeter. (See Schwartz Aff., ¶ 53).

The undisputed testimony is that the Talbots extension meant $150,000 more in rents to LaPeter. (See Schwartz Aff., ¶ 59). The extra rental income was certainly material to Canada Life's decision to concede to the terms of the Commitment Letter, particularly the below market interest rate. Thus, Canada Life was justified in voiding the Commitment Letter. See *Robinson*, 45 P.3d at 838. Accordingly, summary judgment on LaPeter's breach of contract claim is also warranted based on LaPeter's misrepresentation.[8]

---

[8] There is some disagreement among the courts as to whether the Court should take into account the underlying evidentiary standard of clear and convincing evidence on a misrepresentation claim at the summary judgment stage. *See e.g. Arboireau v. Adidas-Salomon AG*, 347 F.3d 1158, 1165 n.9 (9th Cir. 2003) (taking into account the underlying evidentiary standard on the summary judgment motion); *But see DeVries v. DeLaval, Inc.*, 2006 WL 1582179, * 7 (D.Idaho 2006) (suggesting that the clear and convincing standard does not arise until trial). This Court is of the impression that *Arboireau* correctly states that the Court should consider the clear and convincing standard on such a claim. However, the Court need not decide

**Amended Memorandum Decision and Order - 12**

## B.     Breach of the Implied Covenant of Good Faith and Fair Dealing

A contract includes not only that which is stated expressly, but also that which is implied from its language.  See *Independence Lead Mines v. Hecla Mining Co.*, 137 P.3d 409, 413 (Idaho 2006).  "The covenant of good faith and fair dealing may be implied, however, if it arises only regarding terms agreed to by the parties, and requires that the parties perform, in good faith, the obligations imposed by their agreement." *Id.*  The covenant cannot override an express provision in the contract, and no covenant will be implied which is contrary to the terms of the contract negotiated and executed by the parties.  *Id.*  Moreover, Idaho courts have rejected the amorphous concept of bad faith as the standard for determining whether the covenant has been breached.  *Id*. at 413-14.  *Intermountain Gas Co.*, 116 Idaho 622, 627, 778 P.2d 744, 749 (1989).  "Instead, the covenant is an objective determination of whether the parties have acted in good faith in terms of enforcing the contractual provisions, and an objective determination can only be made by considering a party's reasonableness in carrying out the contract provisions." *Id*. at 414.

---

the issue at this time, because even taking into account the higher clear and convincing standard with respect to Canada Life's misrepresentation defense at summary judgment, the Court finds that Canada Life has met its burden.  Schwartz' testimony that LaPeter misrepresented the length of the Talbots lease, its financial effect on the new lease, and Canada Life's statement that it would not have given LaPeter the 5% interest rate had in know about the Talbots extension is uncontroverted.

**Amended Memorandum Decision and Order - 13**

LaPeter contends that Canada Life breached the duty of good faith and fair dealing through self-dealing, anticipatory repudiation, refusal to refinance the loan and failure to deal in a reasonable manner.  However, as discussed above, the covenant of good faith and fair dealing cannot override an express provision in the contract.  In this case, the Commitment Letter contained an express provision requiring certain conditions precedent be met, which, as explained above, were not met.  The Court will not imply a covenant which is contrary to the requirement that those conditions precedent be met.  Accordingly, the Court will grant Canada Life's motion and deny LaPeter's motion for summary judgment on LaPeter's breach of the implied covenant of good faith and fair dealing claim.

### C.     Fraud

To prove fraud, a plaintiff must establish the following elements: (1) a statement or representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury.  See *Lettunich v. Key Bank Nat'l Ass'n*, 109 P.3d 1104, 1110 (Idaho 2005).

Citing *Eastern Idaho Economic Development v. Lockwood Packaging Corp.*, 80 P.3d 1093 (Idaho 2003), Canada Life contends that LaPeter fails to meet the

**Amended Memorandum Decision and Order - 14**

first element of fraud because a lender's representation as to how it will perform in connection with a lending transaction is a promise of future performance. In *Lockwood*, the Idaho Supreme Court addressed a plaintiff's argument that he executed a personal guaranty upon representations and promises made to him by the defendant prior to the execution of a guaranty. The court determined that there was no fraud in the representations given by the defendant because they were, at best, promises of future performance. *Lockwood*, 80 P.3d at 1098.

Here, LaPeter argues that the actual Commitment Letter was fraudulent. LaPeter contends that pursuant to the Commitment Letter, Canada Life promised to lend LaPeter the money to refinance his property, "subject to the satisfaction of certain conditions precedent." (LaPeter Response to Canada Life Motion for Summary Judgment, p. 15). LaPeter's concession that the promise is subject to conditions precedent suggests that it is a promise of future performance. An action for fraud will not lie for statements of future events. See *Maroun v. Wyreless Sys., Inc.*, 114 P.3d 974, 985 (Idaho 2005). LaPeter does not cite anything in the record suggesting that Canada Life did not intend to fulfill its representations to LaPeter at the time he signed the Commitment Letter. Thus, the fraud claim must be dismissed. Moreover, given the Court's determination above that the conditions precedent were not met, the Court finds that Canada Life's representations were

**Amended Memorandum Decision and Order - 15**

not false, even under LaPeter's reading of the Commitment Letter. Accordingly, the Court will grant summary judgment in favor of Canada Life on LaPeter's fraud claim.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment (Docket No. 48) shall be, and the same is hereby, DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (Docket No. 52) shall be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion to Strike or, in the alternative, to File a Surreply Memorandum (Docket No. 85) shall be, and the same is hereby GRANTED. The Court shall allow, and deem filed, the surreply brief submitted with the motion.

IT IS FURTHER ORDERED that Defendant's Motion for Order Granting Leave from Local Rule 7.1(c)(1) (Docket No. 69) shall be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that Docket Nos. 41, 64 and 84 are DEEMED MOOT.

The Court will enter a separate Judgment as required by Federal Rule of Civil Procedure 58.

DATED: **September 5, 2007**

B. LYNN WINMILL
Chief Judge
United States District Court

**Amended Memorandum Decision and Order - 17**